# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **JARRETT C. DEMPSEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| **CAPITAL ACCOUNTS, LLC,** | ) |
| **EQUIFAX INFORMATION** | ) |
| **SERVICES LLC, and** | ) |
| **TRANS UNION LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Comes now Jarrett C. Dempsey, Plaintiff, through counsel, and files his Complaint for Violations of the FCRA, FDCPA, and GFBPA showing this Court the following:

1. This Court has jurisdiction over this matter pursuant to the Fair Credit Reporting Act, 15 U.S.C. Section 1681(p) and the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.. Venue lies in the Northern District of Georgia as Plaintiff's claims arose from acts of Defendants perpetrated therein.

### *PRELIMINARY STATEMENT*

2. Plaintiff brings this action for damages based upon Defendants' violations of the FDCPA, FCRA, and GFBPA.

Page **1** of **15**

3. Capital Accounts is a foreign corporation licensed to do business in the State of Georgia that may be served c/o Incorp. Services, Inc., 2000 Riveredge Parkway, NW, Suite 885, Atlanta, Georgia 30328.

4. Equifax Information Services LLC ("Equifax") is a domestic limited liability company with its principal office located at 1550 Peachtree Street N.W., Atlanta GA 30309 and may be served through its registered agent, Lisa Stockard, at that address.

5. Trans Union LLC ("Trans Union") is a foreign limited liability company licensed to do business in the state of Georgia that can be served through its registered agent, c/o Prentice-Hall Corporation System, 40 Technology Parkway South, #300, Norcross, GA, 30092.

6. Equifax and Trans Union are consumer reporting agencies (hereinafter "CRAs"), as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

## FACTUAL ALLEGATIONS

7. Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of Defendants.

8. Since childhood, Plaintiff went to an office of McDonough Dental Center near his home for dental treatment.

9. It was McDonough Dental Center's practice to present Plaintiff with a quote for treatment prior to performing dental treatment on Plaintiff, and Plaintiff would pre-approve the bill and treatment.

10. After treatment, McDonough Dental Center would bill Plaintiff for the treatment he had just received prior to him leaving the office, and Plaintiff paid the balance before leaving.

11. At no time while his location of McDonough Dental Center was open did McDonough Dental Center present Plaintiff with a bill after treatment that varied from the amount that he preapproved.

12. After the Dental office to which Plaintiff went for Dental treatment closed, Capital Accounts began contacting Plaintiff to demand payment of $284, which it claimed was originally owed to McDonough Dental Center.

13. From first contact from Capital Accounts, Plaintiff disputed and continues to dispute that he failed to make payment on any balance owed to McDonough Dental Center.

14. Despite Plaintiff disputing the debt, Capital Accounts has refused to verify the debt, what it is for, the balance, or cease collection until it verifies the debt.

15. Despite the inaccuracy of the claimed balance owed, Capital Accounts started and continues to report false, derogatory information to CRAs including Equifax and Trans Union, stating that Plaintiff had an unpaid balance owed to Capital Accounts on an original debt to McDonough Dental Center in the amount of $284.

16. Defendants Equifax and Trans Union placed the disputed information into Plaintiff's credit file.

17. On January 24, 2019, Plaintiff sent a credit dispute, of which a copy is attached as **Exhibit 1** to Trans Union, stating that the disputed item is inaccurate, that Plaintiff does not owe McDonough Dental Center any money, and that neither Capital Accounts nor McDonough Dental Center have provided any documentation of the purported debt.

18. On June 7, 2019, Plaintiff sent a credit dispute, of which a copy is attached as **Exhibit 2** to Trans Union, stating that the disputed item is inaccurate, that Plaintiff does not owe McDonough Dental Center any money, and that neither Capital Accounts nor McDonough Dental Center have provided any documentation of the purported debt.

19. On June 7, 2019, Plaintiff sent a credit dispute, of which a copy is attached as **Exhibit 3** to Equifax, stating that the disputed item is inaccurate, that Plaintiff does not owe McDonough Dental Center any money, and that neither Capital

Accounts nor McDonough Dental Center have provided any documentation of the purported debt.

20. The disputed information remained in Plaintiff's files with Defendants Equifax and Trans Union.

21. After going under contract contingent to financing on a home, Plaintiff applied for a mortgage loan in July of 2020.

22. On July 17, 2020, Plaintiff was denied a mortgage loan "[d]ue to Credit Score regarding derogatory credit history" at least in part due to Defendants' reporting of the purported McDonough Dental Center debt.

23. Following this denial, Plaintiff again sent disputes to Trans Union and Equifax, of which copies are attached as **Exhibits 4** and **5**.

24. However, the disputed item remains in Plaintiffs' credit files and on Plaintiff's credit reports.

I. **FIRST CLAIM FOR RELIEF AGAINST EQUIFAX AND TRANS UNION: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681e(b)**

25. Plaintiff re-alleges and incorporates paragraphs 7 through 24 above as if fully set out herein.

26. Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in

the preparation of the credit report and credit files they publish and maintain concerning Plaintiff.

27. As a result of this conduct, action and inaction of Equifax and Trans Union, Plaintiff suffers and has suffered damage by loss of and limited credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

28. Equifax and Trans Union's conduct, action and inaction was willful, rendering them each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

29. In the alternative, Equifax and Trans Union's conduct was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

30. Plaintiff is entitled to recover costs and attorney's fees from Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## II. SECOND CLAIM FOR RELIEF AGAINST EQUIFAX AND TRANS UNION: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681i

31. Plaintiff re-alleges and incorporates paragraphs 7 through 30 above as if fully set out herein.

32. Equifax and Trans Union each violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies.

33. Equifax and Trans Union received multiple disputes from the Plaintiff indicating additional information beyond what was contained in Plaintiff's credit files that the factual basis for Capital Accounts' reporting was not accurate.

34. Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to conduct lawful reinvestigations.

35. Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to maintain reasonable procedures with which to verify disputed information in Plaintiff's credit file.

36. Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by relying upon verification from sources it has reason to know are unreliable, namely Capital Accounts.

37. As a result of the actions and inaction of Equifax and Trans Union, Plaintiff suffered damages by loss of and limited credit; loss of the ability to purchase and benefit from credit; pecuniary costs of disputing credit information; and the mental and emotional pain, anguish, and humiliation of repeatedly having

the credit information verified as accurate despite it being false, thus remaining in his credit report, and the embarrassment of credit denials.

38. Equifax and Trans Union each have a regular practice or policy of ignoring disputed information from a consumer if it contradicts the information provided by a credit furnisher such as Capital Accounts after a dispute is sent to the furnisher.

39. It is objectively unreasonable to rely on a furnisher's verification of information without conducting an independent investigation if the furnisher's verification contradicts facts provided in a dispute when the furnisher and consumer's claimed facts contradict each other.

40. Ignoring a factual dispute raised by a consumer because a furnisher verifies information that contradicts the information provided by the consumer in her or his dispute runs a risk of violating the FCRA that is substantially greater than the risk associated with a merely careless investigation of a dispute of fact.

41. On information and belief, Equifax and Trans Union relied entirely on Capital Accounts' response to the disputed information without conducting an investigation of their own.

42. Beyond verifying that Capital Accounts claimed the reported information was accurate, Equifax made no effort of its own to verify the disputed information.

43. Beyond verifying that Capital Accounts claimed the reported information was accurate, Trans Union made no effort of its own to verify the disputed information.

44. Thus, Equifax and Trans Union's reckless disregard of the information provided by Mr. Dempsey, that he had paid his balance was willful, rendering them each liable for actual or statutory damages, and punitive damages in amounts to be determined pursuant to 15 U.S.C. § 1681n.

45. In the alternative, Equifax and Trans Union's conduct was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

46. Plaintiff is entitled to recover costs and attorney's fees from Equifax and Trans Union in amounts to be determined pursuant to 15 U.S.C. § 1681n and/or 1681o.

### III. FIRST CLAIM FOR RELIEF AGAINST CAPITAL ACCOUNTS: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b)

47. Plaintiff re-alleges and incorporates paragraphs 7 through 46 above as if fully set out herein.

48. At no time did Capital Accounts have a reasonable or good faith belief in the veracity of any of the Capital Accounts Representations.

49. Plaintiff has repeatedly contested the Capital Accounts Representations to Capital Accounts.

50. Plaintiff disputed the Capital Accounts Representations to Equifax and Trans Union.

51. Equifax and Trans Union then forwarded on these disputes to Capital Accounts and otherwise notified Capital Accounts of Plaintiff's disputes.

52. On all occasions that Plaintiff disputed Capital Accounts' furnished credit information, Capital Accounts verified, without justification, that the Capital Accounts Representations were accurate.

53. All Defendants failed to conduct an adequate investigation of Plaintiff's dispute, which is clearly indicated by the fact that all Defendants continue to report the Capital Accounts Representations.

54. Capital Accounts re-verified the Capital Accounts Representations to Equifax and Trans Union repeatedly.

55. Capital Accounts violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing the Capital Accounts Representations within Plaintiff's credit files with Equifax and Trans Union without also including a notation that this debt was disputed.

56. Capital Accounts violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of the Capital Accounts Representations.

57. Capital Accounts violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to review all relevant information regarding same; by failing to accurately respond to Equifax or Trans Union.

58. Capital Accounts violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to permanently and lawfully correct their own internal records to prevent the re-reporting of the Capital Accounts Representations to the consumer reporting agencies.

59. As a result of this conduct, action and inaction of Capital Accounts, Plaintiff suffered damage by loss of and limited credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of having the Capital Accounts Representations repeatedly verified in his credit file, and the credit denials and worry that his finances will be negatively impacted.

60. Capital Accounts' conduct, action and inaction was willful, rendering it liable for actual, statutory, and punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.  In the alternative, Capital Accounts was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. 1681o.

61. Plaintiff is entitled to recover costs and attorney's fees from Capital Accounts in an amount to be determined pursuant to 15 U.S.C. § 1681n and § 1681o.

## IV. SECOND CLAIM FOR RELIEF AGAINST CAPITAL ACCOUNTS: VIOLATIONS OF FDCPA, 15 U.S.C. § 1692d

62. Capital Accounts, LLC is a "Debt Collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

63. Defendant Capital Accounts identifies itself as a "Debt Collector" and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

64. The subject purported debt for $284 is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

65. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." §1692d(5) further prohibits, "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

66.  Defendant violated §1692d, and d(5) when it repeatedly called Plaintiff after being notified to stop. Defendant called Plaintiff at least 25 times after he demanded that it stop calling. This repeated behavior of systematically calling Plaintiff's phone in spite of his demands was harassing and abusive. The

frequency and volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing Plaintiff. 30. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient and harassing to Plaintiff.

## V. VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (FBPA), O.C.G.A. § 10-1-390, et seq.

67. Plaintiff re-alleges and incorporates paragraphs 62 through 66 above as if fully set out herein.

68. The FDCPA violations above are per se intentional violations by Defendants of the Georgia Fair Business Practices Act (FBPA), O.C.G.A. § 10-1-390, which prohibits any unfair or deceptive acts and practices in the conduct of consumer transactions. See 1st Nationwide Collection Agency, Inc. v. Werner, 288 Ga. App. 457, 459 (2007) ("a violation of the FDCPA is clearly considered a violation of the Federal Trade Commission Act… so… the trial court correctly ruled that Nationwide's violation of the FDCPA also constituted a violation of the FBPA.").

69. Capital Accounts has violated the GFBPA by use of unlawful acts and practices within the meaning of O.C.G.A. § 10-1-393. To wit, Plaintiff's phone calls to Plaintiff transgress OCGA § 16-11-39.1(a), which forbids and defines "Harassing Communication" as when one "[c]ontacts another person repeatedly via telecommunication… for the purpose of harassing, molesting,

threatening, or intimidating such person or the family of such person." OCGA § 16-11-39.1.

70. Plaintiff sent an ante litem demand to Capital Accounts but received no offer to settle his claim.

71. Plaintiff has suffered damages because of Plaintiff's violations of the GFBPA in an amount to be proven at trial, including emotional distress, annoyance, and aggravation.

72. Plaintiff is entitled to treble damages pursuant to O.C.G.A. § 10-1-399.

73. Plaintiff is entitled to the recovery of reasonable attorney's fees pursuant to O.C.G.A. § 10-1-399.

74. Capital Accounts' conduct caused Plaintiff to suffer mental or emotional anguish as more fully described, *supra*.

75. Plaintiff sent correspondence to Defendant Capital Accounts in a good faith effort to resolve her claims.

76. Defendant Capital Accounts failed to respond to Plaintiff's good faith effort to settle her claims with any reasonable offer.

77. Pursuant to O.C.G.A. § 10-1-399, Plaintiff is entitled to the recovery of treble damages.

78. Plaintiff is entitled to the recovery of reasonable attorney's fees and costs of litigation.

79. Plaintiff is entitled to Punitive Damages for Defendant Capital Accounts' willful transgression of the FBPA.

## *PRAYER FOR RELIEF*

THEREFORE, Plaintiff prays that this Court grant the following relief against Defendants:

    a) actual damages;

    b) statutory damages;

    c) treble damages against Capital Accounts;

    d) punitive damages;

    e) attorney's fees and costs; and

    f) such other relief as this court deems appropriate.

JURY TRIAL DEMANDED

Dated: September 14th, 2020.

Respectfully submitted,

**SMITH, WELCH, WEBB & WHITE, LLC**
By: **s/Orion G. Webb**
Orion G. Webb, Esq.
Georgia Bar No. 479611
280 Country Club Drive, Suite 300
Stockbridge, GA  30281
T. (770) 389-4864
F. (770) 389-5193
owebb@smithwelchlaw.com